Christine RUSH

v.

SCOTT SPECIALTY GASES, INC.

Civ. A. No. 95–CV–0748.

United States District Court,
E.D. Pennsylvania.

Feb. 12, 1996.

Martha Sperling, Silver & Sperling, Doylestown, PA, for plaintiff.

J. Freedley Hunsicker, Jr., Patricia Proctor, Drinker, Biddle & Reath, Philadelphia, PA, for defendant.

### MEMORANDUM

JOYNER, District Judge.

Plaintiff Christine Rush's action asserts discrimination against her by her former employer, Defendant Scott Specialty Gases, Inc., on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994); the Federal Equal Pay Act, 29 U.S.C. § 206 (1978); the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 951–963 (1991) (PHRA); the Pennsylvania Equal Pay Law, 43 Pa.Stat. Ann. §§ 336.1—336.10 (1992) and Pennsylvania common law. Both Plaintiff and Defendant have moved for summary judgment on each of the eight counts in the Complaint. We will dispose of both motions in this Memorandum and accompanying Order.

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

## FACTUAL BACKGROUND

Rush was hired by Scott in September, 1991, on a full-time basis to replace a male employee. Although she was hired as a Lab Tech I, the man she replaced was a Lab Tech II, which has a different job description as well as higher salary and benefits. During her time at Scott, Rush was the only female employee in its lab. Rush alleges that she was continuously discriminated against at the lab. This discrimination allegedly took the form of unequal training and promotion as well as a hostile environment.

Rush's evidence is that from the day she was hired, she was consistently given the more routine and mundane tasks to perform and was singled out for discipline. In addition, her evidence is that she was denied equal training opportunities, which limited her opportunity for advancement. For example, in 1990, she avers that she was not told about a class in standard flask making, which had become a prerequisite for promotion. As a result, she did not attend the class. When she learned about the class and that it had been videotaped, she asked to watch the tape and then be considered for promotion. Scott refused and subsequently promoted three of her male co-workers. This evidence is contested by Scott.

In addition, Rush presents evidence that Scott's lab was a hostile work environment for women. She, and others, testified at their depositions that derogatory comments about women in general and her in particular, were constant and came from numerous men at the lab, including and often in the presence of management. Also, more than once, one co-worker apparently told other male co-workers that he wanted to 'take Rush to his van, f* * * her and then shoot her in the head so that she could not say what he had done.' Rush and others also testified that a different co-worker groped her on a near-daily basis and often slapped her on the buttocks. This evidence is also contested by Scott.

In 1991, Rush filed a claim with the EEOC concerning the standard flask making class and subsequent failure to promote. This charge was disposed of through a Negotiated Settlement Agreement and Release. Scott agreed to meet with Rush to discuss its policy concerning training and promotion, to provide her with the same formal training and instruction as other employees received and to consider her for a Lab Tech II Analyst position if such a vacancy occurred. In exchange for Scott's satisfactory fulfillment of those promises, Rush agreed not to institute a lawsuit on those charges.

Rush alleges that at the meeting, Scott set much higher prerequisites for her promotion then any of the men were required to, or could, meet. In addition, Scott allegedly promoted a man to Lab Tech II without considering her, and hired a male college student to work one summer as a Lab Tech II. These acts, she alleges, violate the Settlement Agreement.

## DISCUSSION

### 1. PRELIMINARY OBJECTIONS

Scott seeks summary judgment on the ground that all claims that accrued prior to 300 days before her second EEOC claim was filed on November 1, 1993 are time-barred and that her pre–1991 claims are barred by the release in the Settlement Agreement. Rush objects to both arguments. First, she asserts that her claims are not time-barred because she pleads continuing violations, of which a portion of each claim occurred within

the limitations period. Second, she contends that the Settlement Agreement is no bar because Scott has not substantially performed its duties under the Settlement Agreement.

■ First, Rush contends that her claims are not time-barred because she pleads continuing violations. The Supreme Court first recognized the concept of continuing violations in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The Court ruled that when a plaintiff "challenges not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period," the complaint is timely so long as it is filed within the appropriate time after one specific occurrence of that practice. *Id.* at 380, 102 S.Ct. at 1125. The limitation on this rule is that the actual violations must be continuing, not just the effects of a violation. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

■ Rush's evidence of a hostile environment fits comfortably into the continuing violations mold. Rush alleges that from the time she started in the lab, she was subjected to offensive conduct involving sexual harassment, such as comments about the propriety of working women, discussions of sex, told she was a loser and an animal and groped on an almost daily basis by one co-worker. *West v. PECO*, 45 F.3d 744, 755 (3d Cir. 1995). Further, she has adequately proffered evidence that there was an ongoing discriminatory policy of denying her equal training and promotional opportunity, giving her the least challenging and interesting work and singling her out for discipline on matters such as late arrivals. *Haithcock v. Frank*, 958 F.2d 671, 678 (6th Cir.1992). These contested evidentiary showings are sufficient to show continuing violations, of which some incidents occurred within the statutory time. For this reason, Rush's claims are not time-barred.

■ Second, Rush maintains that the Release and Settlement Agreement are not bars to a revival of the claims within the first EEOC charge. When an employer promises to take remedial action and the employee's release of claims is conditioned on a successful completion of the remedial action, only a substantial performance of the remedy will serve to bar revival of the claims. *Melendez v. Horizon Cellular Tele. Co.*, 841 F.Supp. 687, 691 (E.D.Pa.1994).

■ Rush's evidence is that she was given standards to meet that were much higher than any of the men in the lab had been required to, or could, meet and also that a Lab Tech II vacancy occurred and that she was not considered. Scott contests this with evidence that the opening was not for a Lab Tech II Analyst position, but for a different Lab Tech position. There is a genuine issue of fact as to the actual job that was filled, as opposed to the title placed on it. At this point in the litigation, we cannot say that Scott substantially performed the Settlement Agreement. For that reason, Rush's first EEOC charges can be revived. However, she must elect her remedies, and by electing to revive those earlier claims, cannot also sue for breach of the Settlement Agreement. *Id.; Polish American Mach. Corp. v. R.D. & D. Corp.*, 760 F.2d 507, 514 (3d Cir.1985). For this reason, if at trial Rush proves that the Settlement Agreement was not substantially performed by Scott, and therefore proceeds with her revived claims, summary judgment will be granted on the breach of contract claim.

### 2. *TITLE VII AND PHRA VIOLATIONS*

■ Rush brings both a hostile environment and disparate treatment claim under Title VII and the PHRA.[1] For the purposes of its summary judgment motion, Scott does not dispute whether Rush can show a prima facie case of sex discrimination. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990). Once a prima facie case is made, the burden of production switches to a defendant to assert legitimate, non-discriminatory reasons for the allegedly discriminatory actions. *Id.* If a defendant can make that showing,

---

1. PHRA claims are judged under the same standards as Title VII claims. For this reason, Title VII caselaw applies equally to Rush's PHRA claims. *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 469 n. 10 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993).

the burden of production switches back to the plaintiff to rebut the defendant's proffered legitimate reasons by a preponderance of the evidence. *Id.* This can be done either by showing that each reason is a recent fabrication or that discrimination is more likely than not a motivating or determinative cause for the actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637–38 (3d Cir.1993).

Scott maintains that it had legitimate, non-discriminatory reasons for not promoting Rush. First, that it never had a Lab Tech II Analyst opening for which to consider Rush. Its evidence is that the only Lab Tech II opening, to which a man named Garren Knoll was promoted, was not for an Analyst, but for an automation specialist/instrument technician. It presents evidence that the job descriptions of Analyst and automation specialist were demonstrably different, and that Rush was not qualified for the automation specialist job. Further, Scott presents evidence that when it hired a college student for a Lab Tech II Analyst position, that he was hired on a temporary basis at a lower wage. It would have been a demotion, Scott asserts, to hire Rush for that job.

Rush contends that Scott's reasons for promoting Knoll are pretextual. She presents evidence that the job descriptions for Lab Tech I and II automation specialist were identical and that the only reason to promote Knoll was to give him a raise. In addition, within a year of his promotion, Knoll's job duties had shifted to almost 80% Analyst duties. Rush maintains that this evidence casts doubt on Scott's proffered reasons. *EEOC v. Martin Marietta Corp.,* 819 F.Supp. 1030 (M.D.Fla.1993).

We find that Rush has successfully cast doubt on Scott's proffered reasons for not promoting her. First, there has been no satisfactory reason proffered why she was not permitted to take the flask making class until after she filed her first EEOC charge or whether she was informed of the class at all. Moreover, there is evidence that Scott's reasons for not providing her with the class have changed since the time of the initial EEOC charge to this litigation. Second, her evidence as to Knoll's duties before and after his promotion cast doubt on the proffered reasons for not promoting her.

■ With respect to Rush's hostile environment claim, Scott contends that her allegations do not support a finding that discrimination in the workplace was so pervasive that the conditions of her employment were altered. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Conduct that is merely offensive or that only makes a work environment unpleasant does not comprise a Title VII violation. *Harris v. Forklift Sys., Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Scott contends that Rush's evidence only shows occasional, insignificant derogatory comments that cannot constitute a hostile workplace. *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 863 (3d Cir.1990). Further, it declares that Rush does not aver facts to show a single egregious incident that can be enough to show a hostile environment. *Cf. Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1274 (7th Cir. 1991) (single KKK meeting in workplace sufficient to show hostile workplace).

We disagree. First, Rush's evidence is that the derogatory comments were not isolated, but were continuous and occurred over a number of years. Second, we find that the alleged "take her to my van . . ." comment is so egregious that it could demonstrate a hostile workplace. This is especially so when the comment was allegedly made more than once and given the overall tone alleged to exist within the Scott lab. For this reason, we find that Rush has successfully shown at least a genuine issue as to the work environment at the Scott lab.

These same factors, if true, would also go to show a constructive discharge. Scott correctly cites cases holding that there is only a constructive discharge when a workplace is so intolerable that a reasonable person would feel compelled to resign. *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988). Here, however, Rush's evidence does demonstrate such a condition. In addition to that noted above, Rush proffers evidence that on the day of her resignation, the

lab manager called an unprecedented meeting of all the male lab workers to discuss Rush and to gather their input on how to discipline her; one co-worker recommended firing her. A jury could reasonably find that these incidents would have compelled a reasonable person to resign.

### 3. EQUAL PAY ACT

▉ Rush also brings a claim under both the federal and state Equal Pay laws. First, Scott moves for summary judgment on the state equal pay law on the ground that the law expressly excludes from its coverage any employee who is covered by the federal equal pay act. 43 Pa.Stat.Ann. § 336.2(a). In her response to Scott's motion, Rush presents no argument in opposition and it appears that she could not. We grant summary judgment as to Count Four in Scott's favor.

As to her federal claim, Scott contends that summary judgment is appropriate because Rush is paid equally with other Lab Tech Is. Insofar as Rush asserts an unequal pay claim because she was not promoted to Lab Tech II and therefore was paid less than Lab Tech IIs, Scott contends that Rush cannot show that she was (1) employed doing substantially the same work, (2) that the jobs were performed under similar working conditions and (3) that she was paid a lower wage than members of the opposite sex doing equal work. 29 U.S.C. § 206(d)(1). Scott points to evidence that the Lab Tech IIs either had more experience than Rush or had successfully completed the standard flask making class when they were promoted.

Rush contests this evidence and proffers her own in rebuttal. She presents evidence that she performed substantially the same work as the Lab Tech IIs under the same working conditions. Part of this is evidence that she substituted for various Lab Tech IIs when they were on vacation.

▉ There is a genuine issue of fact as to whether Rush performed substantially equal work under similar working conditions but was denied equal pay because of her sex. Summary judgment is therefore denied on Count Three.

### 4. STATE COMMON LAW COUNTS

▉ Count VII alleges a common law wrongful termination claim against Scott. It contends that summary judgment is appropriate on that count because the PHRA is the exclusive state law remedy for employment discrimination in Pennsylvania. 43 Pa. Stat.Ann. § 962(b). Rush does not make any argument to the contrary. We agree with Scott's analysis and grant summary judgment in its favor on Count VII.

▉ With respect to Count VIII, for breach of the Settlement Agreement, as discussed above, Rush cannot seek damages for breach of this Agreement and also claim that substantial non-performance permits her to set it aside and revive her first EEOC charges.

### 5. PUNITIVE DAMAGES

▉ Finally, Scott seeks summary judgment on Rush's punitive damages request. Punitive damages are only available when the alleged conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community." *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 514, 536 A.2d 1375, 1384 (1988), *rev'd on other grounds*, 522 Pa. 86, 559 A.2d 917 (1988). Scott also contends that the PHRA does not allow for punitive damages. *Shaffer v. National Can Corp.*, 565 F.Supp. 909, 914 (E.D.Pa.1983).

▉ More recent Courts have held, though, that the PHRA does allow for punitive damages, and we hold similarly. *Jackson & Coker, Inc. v. Lynam*, 840 F.Supp. 1040, 1050 (E.D.Pa.1993) ("Courts of this District have overwhelmingly concluded that there is a right to punitives under the PHRA"), *aff'd*, 31 F.3d 1172 (1994). Moreover, Rush maintains, and this Court agrees, that her evidence of harassment, especially the "take her out to my van ..." statement, can be found to be outrageous. For this reason, summary judgment on the claims for punitive damages is denied. An appropriate Order follows.

## ORDER

AND NOW, this 12th day of February, 1996, upon consideration of Plaintiff's Motion for Summary Judgment and response thereto and upon consideration of Defendant's Motion for summary judgment and response thereto, the Motions are hereby GRANTED in PART and DENIED in PART in accordance with the attached Memorandum. It is hereby ORDERED that Summary Judgment is hereby DENIED for Counts I, II, III, IV, V and VIII. It is hereby FURTHER ORDERED that Summary Judgment is hereby GRANTED in DEFENDANT's favor on Count VI and VII.