Christine **RUSH**

v.

**SCOTT SPECIALTY GASES, INC.**

**Civil Action No. 95–748.**

United States District Court,
E.D. Pennsylvania.

June 13, 1996.

Martha Sperling, Silver & Sperling, Doylestown, PA, for Plaintiff.

J. Freedley Hunsicker, Jr., Patricia Proctor, Drinker Biddle & Reath, Philadelphia, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

After a two-week trial, a jury awarded Plaintiff Christine Rush a verdict on all but one of her claims against Defendant Scott Specialty Gases, Inc. These claims were based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17 (1994) and the Pennsylvania Human Relations Act, 43 Pa.Cons.Stat.Ann. §§ 951–963 (1991)

(PHRA). Rush alleged discrimination in training and promotion and a hostile work environment. The jury's verdict awarded $203,000 in lost wages, $1,000,000 in pain and suffering and $3,000,000 in punitive damages. Scott now seeks a judgment as a matter of law pursuant to Fed.R.Civ.P. 50, or a new trial pursuant to Fed.R.Civ.P. 59 or at least an order conditioning denial of this motion on Rush's acceptance of a remittitur pursuant to Fed.R.Civ.P. 59.

The basic factual background of this action was explored in our February 12, 1996 Memorandum and Order denying Scott's motion for summary judgment. *See* 914 F.Supp. 104 (E.D.Pa.1996). We will not re-state that background here, but we stress that we do not incorporate any of the factual rulings or conclusions from that opinion into this. These two decisions come at very different points in the litigation and this opinion is based solely on the record developed at trial.

**Standards of Review**

■ On a motion for judgment as a matter of law, a court must take the evidence in the light most favorable to the verdict winner and determine whether it amounts to a "legally sufficient evidentiary basis for a reasonable jury to find for" the verdict winner. Fed.R.Civ.P. 50(a)(1); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 728 (3d Cir.1988). If it does not, a judgment as a matter of law is appropriate.

■ Even if a court finds that a judgment as a matter of law is not appropriate, it may still conclude that the weight of the evidence is against the verdict and order a new trial to prevent a miscarriage of justice. *Id.* at 736. A court may also grant a new trial if the verdict was the result of erroneous jury instructions, was excessive or clearly unsupported by the evidence, or was influenced by extraneous matters such as passion, prejudice, sympathy or speculation. *Lightning Lube, Inc. v. Witco Corp.*, 802 F.Supp. 1180, 1186 (D.N.J.1992), *aff'd*, 4 F.3d 1153 (3d Cir.1993); *Link v. Mercedes–Benz*, 788 F.2d 918, 922 (3d Cir.1986).

■ In the alternative, a court may deny a motion for a new trial on the condition that plaintiff accept a remittitur of the

jury verdict. *Spence v. Board of Educ.*, 806 F.2d 1198, 1201 (3d Cir.1986); *Marcone v. Penthouse Int'l, Ltd.*, 577 F.Supp. 318, 335 (E.D.Pa.1983), *rev'd on other grounds*, 754 F.2d 1072 (3d Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). Some verdicts, however, can be so excessive that they inherently demonstrate passion or prejudice. In those cases, a remittitur cannot be ordered, and a new trial is the only solution. *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 603 (5th Cir.1988).

**Discussion**

*1. Motion for Judgment as a Matter of Law*

■ Scott points to a number of evidentiary issues to support its assertion that the evidence does not support the verdict. A careful examination of these issues, however, reveals that this line of argument is based on a very parsed reading of the record. This Court has thoroughly reviewed each area to which Scott points and has looked to the record on each point. After this survey, we conclude that there was a sufficient amount of evidence to support the jury's findings. It is true that much of this evidence was controverted, but that does not affect the point that more than the minimum amount of evidence existed to support Rush's version of the truth. That being said, we deny the Motion for Judgment as a Matter of Law.

*2. Motion for a New Trial*

Scott contends that even if some evidence supported Rush's story, the weight of the evidence is in its favor and therefore a new trial is appropriate. Based on the careful survey referred to above, we find that, in fact, the weight of the evidence was in Rush's favor and so we deny Scott's motion for a new trial on this basis.

■ Scott also asserts, however, that several incorrect evidentiary rulings and jury instructions constitute grounds for a new trial. First, we dismiss many of Scott's assertions of evidentiary error, finding that they are based on incorrect readings of the record; for example, that this Court improperly limited testimony when in fact the testimony

was permitted. *See e.g.* Tr., 4/15/96, pp. 68–69; *see also* Tr., 4/16/96, pp. 144–46. Scott also improperly raises objections to testimony to which it did not object at trial or to which it objected on different grounds. *See e.g.* Tr., 4/10/96, pp. 210–11; Tr., 4/19/96, p. 63. Finally, Scott has failed to show that it was prejudiced as a result of any of the alleged evidentiary errors. *See e.g.* Tr., 4/10/96, pp. 126–27.

■ Scott also seeks a new trial on the ground that several jury instructions were incorrect. We have carefully reviewed each area of alleged error and conclude that the jury charge was proper. When the charge is read as a whole, it is apparent that the areas Scott points to as being misleading or confusing were clear. Further, our review indicates that the charge was accurate based on both the law and the evidence *educed* at trial.

For all the above reasons, we do not grant a new trial on the basis of judicial error.

### 3. *Damages*

Finally, Scott alleges that it is entitled to judgment as a matter of law with respect to damages, or, in the alternative, that a denial of this motion should be conditioned on Rush's acceptance of a remittitur in all areas of damages.

#### 1. *Lost Wages*

■ The jury awarded Rush $203,000 in lost wages. Scott maintains that this award is against the weight of the evidence; further, that the amount is based on speculation because this amount equals an award of Rush's full-time salary and future wages for an additional nine years. Based on the evidence that Rush wants to attend college full-time, Scott insists that awarding nine years worth full-time employment was pure speculation. Scott does not consider that benefits are part of the award because Rush was not entitled to benefits as a part-time employee. Finally, Scott points out that Rush's own estimate of her lost wages was only $108,-

1. Tr., 4/11/96, p. 209.

2. Tr., 4/16/96, p. 69.

3. *Id.* at 72.

754.75, almost half as much as the jury's award.

As a preliminary matter, Rush objects to this motion with respect to lost wages and compensatory damages because Scott allegedly failed to request a directed verdict on those areas at trial. Fed.R.Civ.P. 50. Apart from that, Rush asserts that her lost wages award is supported by the evidence. She counters Scott's speculation argument by reminding the Court that her argument at trial was that she should be compensated at a full time, Lab Tech II salary, because that is what her status would have been except for the discrimination.

■ A jury's award for this type of damages need not be precise. *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 976 (E.D.Pa. 1994); *Jackson & Coker, Inc. v. Lynam*, 840 F.Supp. 1040, 1052 (E.D.Pa.1993), *aff'd* 31 F.3d 1172 (3d Cir.1994). The award, however, must be based on evidence and cannot be the result of speculation. *Id.* For that reason, a court cannot overturn a jury's damage award unless "the record 'is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Id.* (quoting *Danny Kresky Enterps. Corp. v. Magid*, 716 F.2d 206, 209 (3d Cir.1983)).

This Court cannot enter the jury deliberation room to attempt to determine how the jury arrived at its damage award. We do observe, however, that if the jury gave credence to Rush's evidence, as is likely considering the final verdict, it could have found that Rush was entitled to lost wages from the date she left Scott to the month of trial in the amount of $108,754.75.[1] Further, the jury could have found that Rush was entitled to lost medical insurance to the time of trial in the amount of $8,104.85;[2] lost life and disability insurance in the amount of $538.56;[3] lost profit sharing in the amount of $321.15[4] and an additional amount for lost pension of approximately $1,000.[5] In addition, Rush

4. *Id.* at 77–78.

5. *Id.* at 81.

sought damages for lost tuition reimbursement in the amount of $66,557.[6] These elements of damages total $185,276.31. This number is only $17,723.69 less than the actual damage award; well within the range of the award. This is especially so considering that Rush stressed at trial that the numbers she used for computing her lost wages were conservative.[7]

Because the amount the jury was asked to find was not capable of precise mathematical certainty and because the amount the jury did find was within the range of the evidence presented at trial, we find that the jury's verdict is supported by the weight of the evidence and is not excessive.

### 2. Compensatory Damages

■■■ The jury awarded Rush $1,000,-000 in compensatory damages. Scott contends that no evidence exists to support such a large award. It points to Rush's own expert witness's opinion that Rush only suffered from mild to moderate depression, and to her friends' and family's opinions that she was currently performing well in her life. Given this and similar evidence, Scott argues that the jury's award could only have been based on speculation, passion or prejudice. For that reason, Scott seeks either a new trial on this issue or a remittitur.

Again, Rush's position is that there is ample evidence to support the compensatory damage award. She points to testimony from both expert witnesses as well as her family and friends that bolstered her testimony that she suffered emotionally while she was employed at Scott and has continued to feel the effects to this day. Numerous witnesses testified that they saw Rush's personality alter almost completely during her time at Scott. In addition to her altered personality was her altered way of life. There was testimony that as a result of the depression caused by the atmosphere at Scott, Rush ceased her social activities and spent much of her free time at home, sleeping.

■■ There is "no legal yardstick by which to measure accurately" reasonable compensation for pain and suffering. *McDonald v. United States,* 555 F.Supp. 935, 971 (M.D.Pa.1983). As in the area of lost wages, a jury's award should only be disturbed if there is insufficient evidence to support it. *Marcone,* 577 F.Supp. at 332. The Third Circuit has ruled that if the only evidence of emotional distress is plaintiff's own testimony that she was depressed and humiliated, and there is no evidence of physical suffering, the need for professional care or the like, then there is no " 'reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred as a result of' " the wrongful act. *Spence,* 806 F.2d at 1201 (quoting district court opinion).

■■ In contrast, if a plaintiff has corroborated his or her own testimony with testimony of friends, family and expert witnesses and proffers evidence that he or she has needed or will need professional care, this evidence can support a compensatory damages award. *Bolden v. SEPTA,* 21 F.3d 29, 33 (3d Cir.1994). We find that Rush adequately presented evidence that she suffered emotional distress both while she was at Scott and since leaving.

We also, find, however, that the award was excessive. Although Rush plainly proved that she suffered emotional distress for four years while she worked at Scott and has continued to suffer since then, she did not present evidence sufficient to support $1,000,000 worth of suffering. We find that her suffering was proved more in the amount of $100,000 and will condition denial of Scott's new trial motion on her acceptance of a remittitur of $900,000 to $100,000.

### 3. Punitive Damages

■■■ Punitive damages are available when the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized commu-

---

6. Pl.'s Ex. A.

7. This is, of course, strongly contested by Scott, which maintains that Rush's claimed lost earn-

ings are fantastic. Such a determination was for the jury to resolve, however.

nity." *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 514, 536 A.2d 1375, 1384 (1988), *rev'd on other grounds,* 522 Pa. 86, 559 A.2d 917 (1989). A plaintiff must show that defendant acted with a bad motive or a reckless indifference to the interests of others to win a punitive award. *Id.*

The jury awarded Rush $3,000,000 in punitive damages. Scott makes three arguments why this award is improper; (1) punitive damages are unavailable to Rush as a matter of law, (2) punitive damages and (3) this award is so excessive that it shocks the conscience. We shall address each argument in turn.

### A. *Availability as a Matter of Law*

██ Scott declares that there are no punitive damages available under the PHRA. In support, it observes that the PHRA does not specifically provide for punitive damages and that the Pennsylvania Supreme Court has never addressed the issue. *Welcker v. Smithkline Beckman,* 746 F.Supp. 576 (E.D.Pa.1990). Based on this, Scott asserts that punitive damages are not available. *Shaffer v. National Can Corp.,* 565 F.Supp. 909, 914 (E.D.Pa.1983), cited by *Hannah v. Philadelphia Coca–Cola Bottling Co.,* No. 89–0699, 1989 Westlaw 71565 (E.D.Pa. June 23, 1989); *Schweitzer v. Rockwell Int'l,* 402 Pa.Super. 34, 586 A.2d 383 (1990), *app. denied,* 529 Pa. 635, 600 A.2d 954 (1991); *see also Knight v. Albert Einstein Ctr.,* 748 F.Supp. 280 (E.D.Pa.1990).

As we ruled at the summary judgment stage, however, more recent Courts have held that the PHRA does allow for punitive damages. *See e.g. Clark v. Commonwealth of Pa.,* 885 F.Supp. 694, 715 (E.D.Pa.1995); *Jackson & Coker,* 840 F.Supp. at 1050 ("Courts of this District have overwhelmingly concluded that there is a right to punitives under the PHRA"), *aff'd,* 31 F.3d 1172 (1994). Nothing has occurred in the interim to change our finding that, when faced with the question, the Pennsylvania Supreme Court will countenance the award of punitive damages under the PHRA. For that reason, Scott's first argument fails.

### B. *Availability as a Matter of Evidence*

██ Scott contends that even if punitive damages could be awarded in PHRA cases in general, that there is no basis for such an award in this case. First, it contests whether Rush has shown outrageous conduct. The Third Circuit has stated that the level of outrage needed to prove an intentional infliction of emotional distress case will rarely be found in the employment setting. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3d Cir.1990); *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). It could be found, however, in a situation where sexual harassment is coupled with retaliation or some other activity. *Id.; see also Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 741 (3d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992); *cf. Woodson v. AMF Leisureland Ctrs.,* 842 F.2d 699, 704 (3d Cir. 1988).

Rush declares that she did prove outrageous conduct by Scott. First, however, she objects to Scott's use of intentional infliction of emotional distress cases to bolster its argument. Rush insists that the purposes behind that tort and a damage award of punitive damages are wholly different. For example, the award of punitive damages is directed toward the conduct of the defendant and not the effect of the conduct on the plaintiff. *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 69 (1989). Further, punitive damages can be awarded even where there are no compensatory damages. *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989). Because the two are so different from each other, Rush encourages us only to rely on punitive damages case-law to make our ruling.

Second, Rush points to ample evidence in the record that the conduct in the Scott lab was outrageous. Although Scott disputes whether the Richards statement was made, there was credible evidence that it was made, and it and other statements made by Richards, as well as all other types of conduct, could reasonably be seen by the jury to have been outrageous. We agree with Rush that

she presented evidence of conduct that a reasonable jury could find was "outrageous."

 Scott also argues, however, that there was no evidence of malice, and so no evidence supports the punitive damages award. As was discussed at various points throughout this litigation, however, malice is not the only way to establish punitive damages. In fact, punitive damages may be awarded for conduct that is "outrageous because of the defendant's evil motives *or* his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2) (1977) (cited by *Rizzo*, 555 A.2d at 69) (emphasis added).

There was evidence that the hostile environment in Scott's lab was well known to Rush's immediate supervisors as well as to the higher level managers such as the Plant Manager. Indeed, there was evidence that some of those managers took part in the harassment. A reasonable jury could easily have found that this evidence demonstrated a reckless indifference to Rush's rights. For this reason, we find that there was a sufficient quantum of evidence to support an award of punitive damages.

### C. Amount of Award

 The final question, then, is whether the evidence supported this particular award of $3,000,000. Scott vigorously argues that this award is excessive. In fact, Scott argues that this award is so excessive that it demonstrates a totally unreliable verdict, requiring a whole new trial. *Auster Oil*, 835 F.2d at 603. At the least, Scott requests a remittitur of the amount.

 The general rule that a jury's award is to be disturbed only in very unusual circumstances is unaffected by the Supreme Court's recent decision in *BMW of North America v. Gore*, —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and its predecessors, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) and *TXO Production Corp. v. Alliance*

*Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Likewise, these cases do not affect the general rule that a jury's award must be scrutinized by a trial court for its reasonableness.

 Our reading of these three opinions reveals a presumably non-exclusive list of factors that combine to create a reasonable verdict. These are (1) the reprehensibility of the wrongful conduct, (2) the difference between the actual or potential harm suffered and the punitive award,[8] (3) the difference between the punitive award and any potential civil penalties, (4) the effectiveness of the award in meeting its goal of deterrence and (5) the amount of guidance given the jury.

Applying that list to the instant case, we find, first, that Scott's conduct was indeed reprehensible. While the difference between very bad behavior and completely amoral conduct may be easy to see, it is not so easy to draw lines between conduct falling between the two extremes. We need not attempt this trick, however, because we find that the evidence has proved something closer to the "very bad" side of the scale than the "completely amoral" side. It is important to remember, after all, that Scott has been deemed worthy of punishment because of its reckless disregard of Rush's rights, not malice toward her.

Second, we look to the difference between the actual or potential harm suffered and the punitive award. Rush was found to actually have suffered in the amount of 1.2 million. This case is more similar to *Gore* than to *TXO* in the sense that the actual harm is probably identical to or very similar to the potential harm. In *Gore*, there was no allegation that the plaintiff would have suffered significantly more if he had not discovered BMW's non-disclosure when he did. In *TXO*, however, if the defendant had successfully perpetrated its fraud, the plaintiff would have lost an additional 1 to 8 million dollars. Here, Rush has been awarded all her lost wages and benefits, her past, present and future mental suffering as well as the cost of

---

**8.** Rush contends that under *Kirkbride*, there is no need for a relationship between the compensatory award and the punitive award. Given the teaching of Supreme Court cases since *Kirkbride*, we find that there must be a relationship of some sort, whether between the actual damages or the potential damages.

future psychiatric treatment. There is no allegation that she could have suffered a measurably additional amount. For this reason, we find that a significant difference between the compensatory damages and the punitive damages is excessive.

Third, we look to the difference, if any, between the punitive award and the civil penalties authorized. Title VII, the statute most similar to the PHRA, caps all damage awards at $300,000. 42 U.S.C. § 1981a(b)(3)(D). For this reason, this factor also indicates that the jury's award was excessive.

Fourth, we look to whether this award is effective to deter future, similar conduct or whether a lesser amount could serve that end. This award of 3 million, combined with the 1.2 million in other damages, accounts for almost all of Scott's 5.5 million net income last year. Scott's attitude at trial indicated that it did not accept that the treatment Rush suffered was wrong in any way. The jury could reasonably have concluded that a large award was necessary to "wake Scott up and make it smell the coffee." We find, however, that much less than one year's net income would do this job just as well.

Finally, we look to whether the jury had sufficient guidance in arriving at this number. The jury was instructed on the purpose of punitive damages, when they are appropriate, and what to examine in setting an amount, i.e., the offensiveness of the conduct, the amount needed to prevent future misconduct considering the defendant's assets, whether there is a reasonable relation between the actual and punitive damages and finally, instructed to set the award using calm reason, not sympathy for or against any party. This factor, therefore, weighs in favor of the reasonableness of the award.

### 4. Conclusion

 Given the above, we find that the jury's verdict as to punitive damages was excessive. We do not, however, believe that the verdict was so excessive that it demonstrates passion or prejudice. *Auster Oil*, 835 F.2d at 603. For this reason, we will deny Scott's motion for a new trial on this ground. We condition this denial, however, on Rush's

acceptance of a remittitur of her punitive damages award of $2,700,000.

In summary then, Scott's Motions for a Judgment as a Matter of Law and for a New Trial are denied. Scott's Motion for a Remittitur is GRANTED in the total amount of $3,600,000. This leaves Rush with a verdict of $603,000, of which $203,000 is for lost wages, $100,000 is for pain and suffering and $300,000 is for punitive damages. We find this would fairly compensate Rush and would also punish Scott and deter future illegal conduct.

Rush is given twenty days to consider this result, at which time she should contact this Court and indicate whether a new trial should be scheduled or whether her pending post-trial motions are ripe for review.