Laura OLIVER, Plaintiff,

v.

COLE GIFT CENTERS,
INC., Defendant.

No. 3:9702595(GLG).

United States District Court,
D. Connecticut.

Feb. 17, 2000.

Ruth L. Pulda, Peter D. Goselin, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, for Plaintiff.

Peter A. Janus, Paul H. Gamache, Siegel, O'Connor, Schiff & Zangari, Hartford, CT, Dana Shaw MacKinnon, Hartford Life Ins Co., Simsbury, CT, for Defendant.

### Memorandum Opinion

GOETTEL, District Judge.

Following a jury trial at which the plaintiff prevailed on her claims of intentional discrimination in employment under Title VII, 42 U.S.C. § 2000e *et seq.* and the

Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60 *et seq.*, and the jury awarded $100,000 in compensatory damages and $500,000 in punitive damages, the parties have now briefed the question of the limitation of the damages award pursuant to the statutory cap of the Compensatory Damages Amendment ("CDA") to Title VII, 42 U.S.C. § 1981a(b)(3). In addition, the parties have briefed the question of equitable relief, including reinstatement, front pay, and injunctive relief requiring the posting of notices in the Defendant's places of businesses.

## I. *Compensatory and Punitive Damages*

### A. *Title VII's Statutory Cap*

The CDA permits victims of intentional discrimination in employment to recover compensatory and punitive damages but imposes limitations on the damages award based on the size of the employer, ranging from $50,000 for a small employer to a maximum recovery of $300,000 for an employer with "more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 1981a(b)(3)(D). Plaintiff argues that the statutory cap should not apply in this case because the Defendant failed to plead it as an affirmative defense and has therefore waived any claim to a reduction in the jury award based on the statutory cap.

Federal Rule of Civil Procedure 8(c) requires a party to plead affirmatively certain specified defenses as well as "any other matter constituting an avoidance or affirmative defense." A defendant who fails to raise an affirmative defense by presenting it in the initial responsive pleading may be deemed to have waived the defense. The purpose of requiring affirmative defenses to be pleaded is to avoid surprise and to give the opposing party an opportunity to respond. *See Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434,

28 L.Ed.2d 788 (1971); 2 *Moore's Federal Practice* ¶ 8.07[1].

■ Plaintiff fails to cite any case law on the issue of whether Title VII's statutory cap must be pleaded as an affirmative defense. Rather, Plaintiff relies on cases in which the courts held that the defendants waived various statutory limitations other than § 1981a(b)(3) by failing to plead the limitations as affirmative defenses. Plaintiff's reliance on these cases is misplaced. In each of the cases Plaintiff cited, the limitations on damages were part of a statutory scheme distinct from the basis of recovery. The courts in those cases held that the caps were affirmative defenses in order to prevent unfair surprise because the caps were not evident on the face of the statutory schemes under which the plaintiffs had brought their claims. *See, e.g., Ingraham v. United States*, 808 F.2d 1075 (5th Cir.1987) (defendant sought to apply Texas's statutory limitations on medical malpractice damages to reduce plaintiff's recovery under the Federal Tort Claims Act); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222 (1st Cir.1994) (defendant sought to limit plaintiff's contractual damages by imposing Massachusetts statutory limitation); *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810 (1st Cir.1975) (defendant sought to limit recovery for negligence claim by imposing state statutory limitation); *Bentley v. Cleveland County Bd. of County Commissioners*, 41 F.3d 600 (10th Cir.1994) (defendant sought to apply Oklahoma law to reduce plaintiff's recovery under the Rehabilitation Act); *Westfarm Assocs. Ltd. Partnership v. Int'l Fabricare Inst.*, 846 F.Supp. 439 (D.Md.1993), *aff'd*, 66 F.3d 669 (4th Cir.1995) (defendant sought to apply Maryland Local Government Tort Claims Act to reduce award under CERCLA and RCRA); *Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095 (5th Cir.1997) (defendant sought to limit liability under insurance policy by invoking statutory limitations of federal Carriage of Goods by Sea Act).

By contrast, the CDA's statutory cap is evident on the face of the statute as a Congressional limitation on the court's power to award damages to a Title VII plaintiff. *See Bereda v. Pickering Creek Indus. Park, Inc.,* 865 F.2d 49, 54 (3d Cir.1989) (construing Title VII's provision limiting back pay liability). No plaintiff claiming damages under Title VII can complain of unfair surprise, prejudice, or lack of opportunity to respond when confronted with the CDA's limitation of damages, because the limitation is part of the same statutory scheme under which the plaintiff has brought his or her claim.

The Supreme Court noted that "[i]t was not until 1991 that Congress made damages available under Title VII, and even then, Congress carefully limited the amount recoverable in any individual case, calibrating the maximum recovery to the size of the employer." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286, 118 S.Ct. 1989, 1997, 141 L.Ed.2d 277 (1998). More recently, the Court referred to the cap as one example of "certain conditions and exceptions" set forth in the CDA. *West v. Gibson,* 527 U.S. 212, ——, 119 S.Ct. 1906, 1909, 144 L.Ed.2d 196 (1999). However, the Court has never referred to a requirement that the cap be pleaded as an affirmative defense or avoidance.

Similarly, the Second Circuit has not referred to Title VII's statutory cap as an affirmative defense. *See Luciano v. Olsten Corp.,* 110 F.3d 210, 221 (2d Cir.1997) ("[I]f the sum of the compensatory and punitive damages awarded by the jury exceeds the relevant cap, the district court reduces the award to ensure that it conforms with subsection (b)(3); that is, that it '[does] not exceed' the relevant cap for an employer of the defendant's size.") (quoting *Hogan v. Bangor & Aroostook*

*R.R. Co.,* 61 F.3d 1034, 1037 (1st Cir. 1995)).

In the only case we have found that addresses the issue directly, *Peckinpaugh v. Post–Newsweek Stations Connecticut, Inc.,* No. 3:96CV2475(AVC), 1999 WL 334838 (D.Conn. Mar. 17, 1999), the court rejected the plaintiff's waiver argument, noting that the only factual issue in the application of the statutory cap is the determination of the size of the employer. Here, there is no factual dispute; the Defendant concedes that it employed at least 500 employees during the relevant period and thus qualifies for the highest level of damages allowable under § 1981a(b)(3)(D).

For the reasons set out above, we hold that the statutory cap set out in § 1981a(b)(3) is not an affirmative defense and is not waivable. Plaintiff's jury award under Title VII must be reduced to $300,-000 total for the sum of compensatory and punitive damages.

### B. Allocation of Damages

Plaintiff next argues that the damage award should not be reduced because the statutory cap does not apply to Plaintiff's state law claim. Because of the basic differences in the recovery available under Title VII and CFEPA,[1] Plaintiff contends that the $100,000 compensatory damage award as well as a portion of the $500,000 punitive damage award equal to the amount of reasonable attorney's fees and costs of litigating this case should be allocated to her claim under CFEPA, and that the remainder of the punitive damage award should be allocated to her Title VII claim, in order to maximize her recovery.

Defendant, on the other hand, argues that such an allocation of the damage award would constitute a double recovery, since Plaintiff's Title VII and state law

---

1. CFEPA authorizes the court to grant "such legal and equitable relief which it deems appropriate ...." Conn. Gen.Stat. § 46a–104. Although there is no limit on the amount of compensatory damages available under CFEPA, punitive damages in Connecticut are mea-

sured by reasonable attorney's fees and costs. *See Ford v. Blue Cross & Blue Shield of Conn., Inc.,* 216 Conn. 40, 59 n. 4, 578 A.2d 1054 (1990); *Collier v. Connecticut Dep't of Public Safety,* 1999 Conn.Super. LEXIS 1147, 1999 WL 300643, at *11 (Super.Ct. May 3, 1999).

claims precisely overlap each other. Defendant in essence argues that Plaintiff should not be permitted to "mix and match" or "cherry-pick" the damages awards and must choose between the two theories of liability.

"Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 67, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Congress specifically declined to preempt state human rights law, instead including a savings clause in Title VII which states: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . . ." 42 U.S.C. § 2000e–7.

It is undisputed that a plaintiff generally may not recover double damages. A plaintiff is entitled to "only a single slice of the pie—but the choice of the slice [is hers]." *Freeman v. Package Machinery Co.,* 865 F.2d 1331 (1st Cir.1988). The Second Circuit has held that "where only a single award of damages, not segregated into separate components, is made, the preferable rule, we think, is that the successful plaintiff be paid under the theory of liability that provides the most complete recovery." *Magee v. United States Lines, Inc.,* 976 F.2d 821, 822 (2d Cir.1992).

The issue here, however, is not duplicative compensatory or duplicative punitive damages. Rather, Plaintiff seeks to allocate two separate forms of damages, compensatory and punitive, between two separate theories of liability, Title VII and CFEPA.

The court has found no authority expressly authorizing or prohibiting such allocation of the damages award. *See Luciano v. Olsten Corp.,* 912 F.Supp. 663, 675 (E.D.N.Y.1996), *aff'd on other grounds,* 110 F.3d 210 (2d Cir.1997). We note that

a handful of other courts considering this issue have permitted allocation of compensatory damages to state law claims and punitive damages to Title VII claims in order to maximize the plaintiff's recovery by removing the compensatory damage award from Title VII's statutory cap. *See, e.g., Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1349–50 (D.C.Cir. 1999); *Funk v. F & K Supply, Inc.,* 43 F.Supp.2d 205, 225–26 (N.D.N.Y.1999); *Anderson v. YARP Restaurant, Inc.,* 1997 WL 27043, at *6–7 (S.D.N.Y. Jan. 23, 1997); *Luciano v. Olsten Corp.,* 912 F.Supp. 663, 675, *aff'd,* 110 F.3d 210 (2d Cir.1997); *Goodwin v. Seven–Up Bottling Co. of Philadelphia,* 1998 WL 438488, at *6 (E.D.Pa. July 31, 1998); *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 982 F.Supp. 786, 787–89 (W.D.Wash. 1997); *Collier v. State,* 1999 Conn.Super. LEXIS 1147, 1999 WL 300643, at *11 (Conn.Super.Ct. May 3, 1999).

■ Nevertheless, we find such allocation inappropriate, particularly where, as here, the plaintiff is adequately compensated by the damage award as capped under the federal scheme. As we recently stated in *Newtown v. Shell Oil Co., Inc.,* each statutory system is a unity. *See* 74 F.Supp.2d 160, 162 (D.Conn.1999). The court must consider as a whole the various forms of relief available under each statutory scheme in determining which theory of liability provides Plaintiff with the greater recovery.

The statutory systems at issue here, Title VII and CFEPA, are co-extensive in the forms of relief they provide. A successful plaintiff may be entitled to a full panoply of remedies under either statutory system, including back pay, reinstatement, front pay, prejudgment interest, and other injunctive relief, as well as compensatory and punitive damages. However, under the state system, punitive damages are quite limited. *See supra* note 1.

Since the elements of liability are the same under both systems, this issue was

submitted to the jury as a single question, as were the damage findings. This is not a situation where a complainant is precluded from seeking a particular type of remedy necessary for make-whole relief. *Cf. New York Gaslight*, 447 U.S. at 67–68, 100 S.Ct. 2024 (noting that a complainant might seek back pay under Title VII if state law provides only injunctive relief). Rather, Plaintiff seeks to supplement the dollar amount of relief available under either state or federal law by splitting the recovery between the two separate statutory systems. To perform such judicial surgery would contravene the policies underlying both the Congressional limitation on recovery under Title VII and the limitation on punitive damages under Connecticut law. Absent explicit authority from our Circuit Court permitting such allocation, we decline to do so.

Similarly, we find no authority permitting the division of the punitive damages award between the state and federal claims. To do so would permit a double recovery. *See Bick v. City of New York*, No. 95CIV8781, 1998 WL 190283 (S.D.N.Y. Apr. 21, 1998). We find that Plaintiff is entitled to recover a total of $300,000 in compensatory and punitive damages under her Title VII claim, because this amount is greater than the potential recovery on her state law claim. Moreover, attorneys' fees are separately available under the Title VII claim.

### C. Defendant's Motion for New Trial or Remittitur

Defendant has moved for a new trial or, in the alternative, remittitur of the compensatory and punitive damage awards as grossly excessive and unsupported by the evidence. Defendant argues that the court must pass on the issue before considering the statutory cap. We do not agree.

### 1. Motion for New Trial

■ The trial court may grant a new trial in order to prevent injustice if the court is convinced that the jury verdict is against the weight of the evidence, the jury reached a seriously erroneous result, or the verdict is a miscarriage of justice. *See U.S. East Telecomms., Inc. v. U.S. West Communications Servs., Inc.*, 38 F.3d 1289, 1301 (2d Cir.1994).

Reviewing the record in this case, we find that there was sufficient evidence to support the jury's verdict in favor of the Plaintiff on her pregnancy discrimination and retaliation claims. Plaintiff testified at trial that her supervisors began to criticize her job performance shortly after she divulged the fact of her pregnancy, and that she was fired shortly after she expressed objections to the criticism. Because we cannot say that the jury's verdict was against the weight of the evidence or that the jury reached a seriously erroneous result, we deny Defendant's motion for a new trial.

### 2. Remittitur

Defendant has moved in the alternative for remittitur of the compensatory damage award from $100,000 to $5,000, and remittitur of the punitive damages from $500,000 to zero. Defendant argues that the damages awarded are grossly excessive and unsupported by the evidence.

■ Remittitur is the "process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984)). In a federal question case, a district court has discretion to find a damage award excessive if it "shocks the judicial conscience." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir.1996). A damage award is excessive if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard to her injury. *See Annis v. County of Westchester*, 939 F.Supp. 1115, 1121 (S.D.N.Y.1996).

■ While the punitive damage award of $500,000 was high, after the cap it is reduced to $200,000. That figure is not so excessive as to warrant remittitur. The Plaintiff testified at trial that she suffered emotional and mental distress as well as pecuniary losses due to the loss of her medical insurance benefits. Compared with other cases involving similar facts, *see, e.g., Annis v. County of Westchester,* 939 F.Supp. at 1121 ($100,000 compensatory damage award based on § 1983 plaintiff's emotional suffering); *Rush v. Scott Specialty Gases, Inc.,* 930 F.Supp. 194, 199 (E.D.Pa.1996) ($100,000 compensatory damage award based on Title VII plaintiff's emotional distress and depression); *Ikram v. Waterbury Bd. of Educ.,* No. 3:95CV2478, 1997 U.S. Dist. LEXIS 14619, at *8–9, 1997 WL 597111, at *3 (D.Conn. Sept. 9, 1997) ($100,000 compensatory damage award within reasonable range based on Title VII's plaintiff's emotional and mental distress), we find that the $100,000 compensatory damage does not shock the judicial conscience. We therefore deny the Defendant's motion as to the compensatory damages.

■ Similarly, we find that the punitive damage award, as capped at $200,000, is not excessive. To determine whether an award of punitive damages shocks the judicial conscience, the court examines three factors: (1) the degree of reprehensibility of the conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this penalty and comparable penalties authorized by law or imposed by judges and juries. *See BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 1598–99, 134 L.Ed.2d 809 (1996). Applying the *Gore* factors to this case, the punitive damage award of $200,000, after the statutory cap, does not shock the judicial conscience. The Plaintiff's evidence at trial, which was accepted by the jury, supports the jury's verdict that the Defendant intentionally discriminated against the Plaintiff because of her pregnancy and retaliated against her by firing her when she voiced objections to the discrimination. The punitive damage award reflects the jury's perception of the reprehensibility of the Defendant's conduct. The punitive damage award, only twice the compensatory damages, is clearly not disproportionate.

Moreover, because the punitive damage is capped by Title VII, the amount awarded is not out of line with awards in similar cases or comparable penalties authorized by law. Nor is the punitive damage award excessive when considering the Defendant's net worth. In light of the purpose of punitive damages, to punish a defendant and to deter it and others from similar conduct in the future, we deny Defendant's motion for remittitur of the punitive damage award to zero.

The Court therefore DENIES Defendant's motion for new trial or remittitur. The compensatory damage award for Plaintiff's Title VII claim remains at $100,000. The punitive damage award is reduced to $200,000, so that the total award conforms with the statutory cap, as discussed above.

The Clerk will enter judgment for the Plaintiff in the amount of $300,000.00.

## II. Equitable Remedies

### A. Reinstatement

■ Plaintiff has also moved for reinstatement to an equivalent position at Defendant's successor in business, Things Remembered, Inc., or in the alternative, front pay. Defendant argues that reinstatement is not appropriate in this case because Cole Gift Centers is no longer in business.

The Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e–5(g), allows the court, in its discretion, to order reinstatement as a remedy for employment discrimination, in order to "reestablish the prior employment relationship ... and at the same time assure the plaintiff of employment free of discrimination ...." *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (1984). However, reinstate-

ment may not be possible if no position is available for the plaintiff at the time of judgment, or where "the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation." *Id.; see also Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125 (2d Cir.1996) (internal quotation marks omitted), *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149 (2d Cir.1998).

In this case, the defendant Cole Gift Centers, Inc. is no longer in business, having merged with Things Remembered, Inc. in January, 1997. The store in Meriden, Ct., where the plaintiff was employed, no longer exists. Defendant's Human Resources administrator testified at trial that Cole Gift Centers' employees were laid off but that they could apply to Things Remembered for a limited number of available positions. Because of the limited number of equivalent positions available, reinstatement of the Plaintiff would likely require displacement of an existing employee. For these reasons, including the antagonism between the parties, we find reinstatement inappropriate.

### B. Front Pay

Plaintiff seeks front pay in the amount of $12,000 as an alternative to reinstatement, to cover the costs of purchasing health insurance for herself and her child for a period of five years. Defendant argues that front pay is subject to the statutory cap in § 1981a(b)(3) as a "future pecuniary loss," and is thus inappropriate in this case, since the damage award already exceeds the cap. Defendant also argues that front pay should not be granted because the damages are speculative.

 The court has discretion to award front pay and future benefits as an alternative to reinstatement, where reinstatement is not appropriate and the plaintiff has no reasonable prospect of finding comparable employment, in order to effectuate Title VII's purpose of "mak[ing] per-

sons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *see also Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1182 (2d Cir.1996). The award of front pay is not appropriate, however, where the plaintiff has already been fully compensated for the injuries resulting from discrimination, or where the plaintiff has not been diligent in seeking comparable employment. *Reed,* 95 F.3d at 1182.

In this case, the Plaintiff testified at trial that she obtained other employment at the same salary level but without equivalent medical benefits within a short time of her dismissal. She conceded that she has made no efforts since October, 1996 to secure other employment that would provide her with medical benefits. Because we find that the Plaintiff has failed to mitigate her damages, and because the jury's award of compensatory damages is sufficient to make the Plaintiff whole, an award of front pay in this case is inappropriate.

### C. Posting Notices

Plaintiff also moved for such other equitable relief as the court deems appropriate, including the posting of notices in defendant's places of businesses stating that the defendant agrees not to engage in unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964. Defendant argues that Cole Gift Centers is no longer in business and that Things Remembered, Inc. is already in compliance with the notice requirements set forth in 42 U.S.C. § 2000e–10. Plaintiff presented no evidence at trial to the contrary. Because we fail to see how merely duplicating the federal notice requirements would further the remedial purposes of Title VII, we deny Plaintiff's motion.

### CONCLUSION

The Court DENIES in part and GRANTS in part Plaintiff's Motion for

Judgment [Doc. # 70–1] and DENIES in part and GRANTS in part Defendant's Motion for Form of Judgment Reducing Award of Damages [Doc. # 80–1]. The Clerk will enter judgment for damages for Plaintiff in the amount of $300,000.00.